UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-4270(DSD/SRN)


Corn Plus Cooperative,

                Plaintiff,

v.                                                        **ORDER**

Continental Casualty Company, and
Lumbermens Mutual Casualty Company,

                Defendants.


      Gregory T. Spalj, Esq., Kristine Kroenke, Esq. and
Fabyanske, Westra, Hart & Thomson, 800 LaSalle Avenue,
Suite 1900, Minneapolis, MN 55402 and Jane Volz, Esq. and
Volz Law Firm, Ltd., Southfork Office Centre, 17315
Liberty Beach Court, Suite 100, Lakeville, MN 55044,
counsel for plaintiff.

      Kevin R. Lewis, Esq., Jerome B. Abrams, Esq., and Abrams
& Smith, 1250 U.S. Bank Plaza, 220 South Sixth Street,
Minneapolis, MN 55402, counsel for Continental Casualty
Company.

      Jeanne H. Unger, Esq., Mark R. Bradford, Esq. and Rider
Bennett LLP, 33 South Sixth Street, Suite 4900,
Minneapolis, MN 55402 and Janelle K. Christensen, Esq.
and Tressler, Soderstrom, Maloney & Priess, 100 Village
Green Drive, Suite 200, Lincolnshire, IL 60069, counsel
for Lumbermens Mutual Casualty Company.


      This matter is before the court upon plaintiff's motion for
partial summary judgment. Based upon a review of the file, record
and proceedings herein, and for the reasons stated, the court
grants plaintiff's motion in part.

**BACKGROUND**

This is a declaratory judgment action to enforce a <u>Miller-Shugart</u> settlement agreement[1] that was entered into by plaintiff Corn Plus Cooperative ("Corn Plus") and Wanzek Construction, Inc. ("Wanzek"), and to declare coverage under the insurance policies implicated by that agreement.   Defendant Continental Casualty Company ("Continental") issued a commercial general liability insurance policy ("CGL policy") to Wanzek for the period of December 31, 2000, to December 31, 2001.   (<u>See</u> Lewis Aff. Ex. 1.) Defendant Lumbermens Mutual Casualty Company ("Lumbermens") issued Wanzek a commercial excess liability insurance policy that follows the terms of coverage of the CGL policy that are relevant to this action and attaches at $1 million ("Lumbermens policy").   (<u>See</u> Jackson Aff. Ex. A.)

Corn Plus is a Minnesota cooperative engaged in the development and operation of an ethanol processing facility. Wanzek is a general mechanical contractor.   In January of 2001, Corn Plus contracted Wanzek to perform, among other things, welding work on the piping system in an expansion of its facility.   Wanzek did not subcontract out any of the welding work and substantially

---

[1]   Under Minnesota law, an insured may stipulate to a money judgment in favor of a plaintiff and, in return, the plaintiff releases the insured from personal liability and agrees to limit recovery from the insurer.   This type of agreement bears the name of the Minnesota Supreme Court decision that first upheld such a settlement, <u>Miller v. Shugart</u>, 316 N.W.2d 729 (Minn. 1982).

completed the work by September of 2001.  However, the welds performed by Wanzek did not meet project specifications because of incomplete weld penetration.  (Engel Aff. ¶ 6.)  Approximately eighty percent of the welds are defective and have resulted in corrosion and bacterial contamination of the corn mash used in the facility.  (Kor Dep. at 115-17; Engel Aff. at ¶¶ 5-13.)  According to Corn Plus, the contamination has led to decreased ethanol production, increased antibiotic treatments and operational costs to disinfect the corn mash and clean pipes, and plant shutdowns to change cooling lines and address centrifuge issues.  (See Kor Dep. at 116, 130-32; Core Dep. at 259-64.)  In addition, repair of the defective welds will necessitate a plant shutdown, which will result in further economic losses.  (See Kor Dep. at 124.)

On January 23, 2002, Wanzek brought a mechanics lien foreclosure action in Minnesota state court against Corn Plus to collect amounts owing under their contract.  (See Lewis Aff. Ex. 3.)  In response, Corn Plus counterclaimed against Wanzek for removal of false mechanic's lien, slander of title, breach of contract, breach of warranty, negligence and declaratory relief. (See Lewis Aff. Ex. 2.)  Wanzek tendered the counterclaims to Continental, and Continental and Lumbermens both denied coverage. (See Kroenke Aff. Exs. L, M, O, P.)  Continental nonetheless defended Wanzek against the counterclaims subject to a complete reservation of its rights to contest coverage.  On May 13, 2003,

Continental brought a declaratory judgment action against Wanzek in Minnesota state court to establish that it did not have a duty to defend or indemnify Wanzek for the counterclaims that arose out of the defective welding.

In February of 2004, Wanzek and Corn Plus notified Continental and Lumbermens that they were negotiating a Miller-Shugart settlement agreement. Neither insurer elected to participate in negotiations or provide settlement funds. (See Kroenke Aff. Exs. O, P, Q.) In March of 2004, Wanzek and Corn Plus entered into a Miller-Shugart agreement. Pursuant to that agreement, Wanzek stipulated to an adjudication that it was negligent in its welding and that its negligence resulted in $2.5 million "in damages to Corn Plus'[s] fermentation and ethanol manufacturing process and facility." (Spalj Aff. Ex. G. at 6.) Judgment was entered against Wanzek on March 24, 2004.

In light of the Miller-Shugart agreement, Corn Plus moved to intervene as a defendant in the declaratory judgment action. The state court granted Corn Plus's motion and dismissed Wanzek. Because the Miller-Shugart agreement exceeded the $1 million coverage limit of Continental's CGL policy, Lumbermens moved to intervene as a plaintiff in the declaratory judgment action because of the likely implication of its policy. On September 2, 2004, the state court granted the motion to intervene and realigned the parties, Corn Plus becoming the named plaintiff.

4

Lumbermens timely removed the case to this court on September 27, 2004, pursuant to 18 U.S.C. § 1332, based upon diversity of citizenship.  On April 22, 2005, Corn Plus, as plaintiff, filed the amended complaint that is currently before the court.   In its complaint, Corn Plus seeks a declaratory judgment that (1) the claims Corn Plus asserted against Wanzek are covered by the CGL and Lumbermens policies and Continental and Lumbermens are required to indemnify Wanzek for the negligence claim that it settled with Corn Plus, and (2) the Miller-Shugart agreement is enforceable against Continental and Lumbermens.

Corn Plus now moves the court for summary judgment as to only the coverage issue, seeking a declaration that the negligence claim it settled and the $2.5 million in resultant damages are covered by the CGL and Lumbermens policies.   In response, Continental and Lumbermens deny coverage, request a continuance under Federal Rule of Civil Procedure 56(f), and ask the court to strike portions of the affidavit of the general manager of Corn Plus, Keith Kor.  For the reasons that follow, the court grants plaintiff's motion in part and denies defendants' requests.

## DISCUSSION

This case presents the question of whether Continental and Lumbermens have an obligation to indemnify Corn Plus based upon the Miller-Shugart agreement, which resulted in a state court

5

adjudication of Wanzek's negligence and a stipulation of damages between Wanzek and Corn Plus.[2]  The duty to indemnify attaches to claims that are covered by an insurance policy and for which liability has been imposed.  See Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 307-08 (Minn. Ct. App. 2002).  Currently before the court is only the issue of coverage, that is, whether the CGL and Lumbermens policies provide coverage for the negligence claim that Wanzek settled and the damages incurred by Corn Plus as a result of Wanzek's negligence.

## I.   Defendants' Request to Strike

Continental and Lumbermens ask the court to strike portions of the affidavit of Keith Kor.  Defendants argue that certain damage allegations by Kor are outside the scope of the pleadings because defendants were not on notice that as a result of the corn mash contamination Corn Plus incurred damages in the form of reduced ethanol production, damage to production equipment and plant shutdowns.  (See Kor Aff. ¶¶ 11-13, 16-17.)  As it relates to the duty to indemnify, the question of whether the insurer had notice of which damages Corn Plus incurred is relevant, if at all, only as to whether the Miller-Shugart agreement is enforceable.[3]  The

---

[2]  As a result of the Miller-Shugart agreement, the duty to defend is not at issue in this case.  See Miller v. Junghans, No. C6-97-1906, 1998 WL 202766, at *1 (Minn. Ct. App. Apr. 28, 1998).

[3]  A Miller-Shugart agreement is enforceable against an insurer if (1) it is reasonable and prudent, (2) it is not the
                                                    (continued...)

enforcement issue is not before the court.  Therefore, defendants'
request is premature and need not be decided at this time.

## II.  Defendants' Request for a Continuance

Continental and Lumbermens request a continuance pursuant to
Federal Rule of Civil Procedure 56(f), which allows a party
opposing a motion for summary judgment to request a continuance
when additional discovery is needed as to facts essential to the
party's opposition.  See Dulany v. Carnahan, 132 F.3d 1234, 1238
(8th Cir. 1997).  Defendants contend that summary judgment on the
parties' coverage dispute is premature because in the Miller-
Shugart agreement Corn Plus and Wanzek stipulated to contested
facts for the purpose of triggering coverage.  To support their
argument, defendants emphasize the fact issues regarding
(1) whether, to what extent, and at what time Corn Plus incurred
damage to its corn mash as a result of the defective welding,
including the timing of any resultant increased antibiotic usage,
and (2) whether the Miller-Shugart agreement is reasonable and
enforceable.  (See Lewis Aff. ¶¶ 13-24; Christensen Aff. ¶¶ 1-2.)

Lumbermens cites to Buysse v. Baumann-Furrie & Co., 448 N.W.2d
865 (Minn. 1989), for the proposition that, when a Miller-Shugart

---

[3](...continued)
product of fraud or collusion and (3) the insured provided notice
to the insurer and thus did not violate a duty to cooperate.
McNicholes v. Subotnik, 12 F.3d 105, 107 (8th Cir. 1993) (citing
Miller, 316 N.W.2d at 733-35); Brownsdale Coop. Ass'n v. Home Ins.
Co., 473 N.W.2d 339, 341 (Minn. Ct. App. 1991).

agreement is entered into for the purpose of triggering coverage, the issue of coverage cannot be resolved apart from the issue of enforcement. Defendant's reliance on <u>Buysse</u> is misplaced. First, <u>Buysse</u> did not involve a coverage dispute but rather an insurer that acknowledged coverage and was denied its contractual right to defend and settle the lawsuit when its insured settled in excess of the applicable policy limits. <u>See</u> 448 N.W.2d at 873-74; <u>see also</u> <u>S.G. v. St. Paul Fire & Marine Ins. Co.</u>, 460 N.W.2d 639, 643 (Minn. Ct. App. 1990) (<u>Buysse</u> doctrine inapplicable to cases that involve insurers that deny coverage but provide defense). Second, to the extent <u>Buysse</u> addressed the issue of an insured's stipulation of facts to trigger coverage, it did so in the context of analyzing whether the <u>Miller-Shugart</u> agreement was enforceable. <u>See</u> 448 N.W.2d at 874; <u>see also</u> <u>Bob Useldinger & Sons, Inc. v. Hangsleben</u>, 505 N.W.2d 323, 330-31 (Minn. 1993) (whether <u>Miller-Shugart</u> agreement is an attempt to control coverage is relevant to whether insured breached its duty to cooperate). Accordingly, the <u>Buysse</u> doctrine does not require that the court defer ruling on the parties' coverage dispute.

The fact issues that defendants point to in support of their Rule 56(f) request relate to the enforceability of the <u>Miller-Shugart</u> agreement.[4] The court will not conjoin the distinct issues

_____

[4] The facts that bear upon liability, causation and damages relate to whether the settlement is enforceable because the court
(continued...)

8

of coverage and enforcement that are involved in this action. <u>See</u> <u>Bob Useldinger & Sons, Inc.</u>, 505 N.W.2d at 326 (declaring coverage prior to determining enforceability); <u>Alton M. Johnson Co. v. M.A.I. Co.</u>, 463 N.W.2d 277, 279 (Minn. 1990) (coverage and enforcement issues distinct); <u>Sphere Drake Ins. Co. v. Tremco, Inc.</u>, 513 N.W.2d 473, 479-81 (Minn. Ct. App. 1994) (determining coverage under <u>Miller-Shugart</u> agreement despite fact issues regarding negligence, causation and damages). A declaration of coverage at this time will best serve the interests of judicial economy because "[i]f the insurer's denial of coverage is sustained, i.e., if there is found to be no coverage for the <u>Miller-Shugart</u> judgment, that ends the matter; there is no recovery against the insurer and the reasonableness of the settlement becomes a moot issue." <u>Alton M. Johnson Co.</u>, 463 N.W.2d at 179. Therefore, a Rule 56(f) continuance is not warranted.

**III.  Ripeness**

Lumbermens argues that this action is not ripe for adjudication as to its policy because there is no evidence that the excess policy will be reached and issues of fact exist as to the

---

[4](...continued)
will consider those facts in evaluating Wanzek's likelihood of success on the merits in the underlying litigation, the reasonableness of the settlement and whether the settlement was the result of fraud or collusion. <u>See</u> <u>McNicholes</u>, 12 F.3d at 109; <u>Alton M. Johnson Co. v. M.A.I. Co.</u>, 463 N.W.2d 277, 279 (Minn. 1990); <u>Traver v. Farm Bureau Mut. Ins. Co.</u>, 418 N.W.2d 727, 732 (Minn. Ct. App. 1988) (plaintiff has burden to prove jury could find insured liable and award damages in excess of amount settled).

cause of the corn mash contamination and damages. "Declaratory judgment is available to resolve the issue of whether insurance coverage is available to indemnify an insured." Nordstrom v. Eaton, 652 N.W.2d 79, 85 (Minn. Ct. App. 2002). The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes the court to enter a declaratory judgment if there exists an actual controversy that is definite, concrete and touches upon the parties' legal relations. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). Whether an actual controversy exists depends upon the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1993). The fitness requirement addresses whether a case would benefit from further factual development. Pub. Water Supply Dist. No. 10 v. City of Peculiar, 345 F.3d 570, 573 (8th Cir. 2003). The hardship requirement addresses whether the plaintiff has sustained a direct injury is in immediate danger of sustaining such an injury. Id. That the liability of an excess insurer is contingent does not defeat jurisdiction over a declaratory judgment on the policy. E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001) (en banc).

The court concludes that there is an actual controversy between Corn Plus and Lumbermens and that this declaratory judgment action is ripe for adjudication. Further factual development is not necessary. Corn Plus and Wanzek settled their disputes for a

sum that exceeds the $1 million cap of the CGL policy and Lumbermens has expressly denied coverage for the claims settled. As to hardship, Corn Plus is currently being denied coverage of a $2.5 million settlement. Moreover, because the Lumbermens policy follows the relevant terms of coverage of the CGL policy, interests of efficiency and expediency dictate that coverage be decided contemporaneously as to both policies. Lastly, Lumbermens is a party to this declaratory judgment action because it voluntarily filed a complaint in intervention because of the practical likelihood that its policy will be implicated by the $2.5 million settlement. For all the foregoing reasons, this matter is ripe for a declaratory judgment on coverage.

## IV.  Summary Judgment

### A.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." For the moving party to prevail, it must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material when

11

its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. The interpretation of an insurance policy is a question of law that the court may properly decide on summary judgment. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001); Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 307 (Minn. Ct. App. 2002).

### B.   Insurance Coverage

Corn Plus seeks a declaration that its negligence claim against Wanzek and the following consequential damages are covered under the CGL and Lumbermens policies: (1) the costs of repair and replacement of Wanzek's defective work and all attendant economic losses associated with that repair and replacement, including future plant shutdowns, and (2) the contamination to its corn mash, including increased costs of antibiotic treatments, increased operational costs, plant shutdowns, damage to production equipment and decreased ethanol production.

The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. <u>Thommes v. Milwaukee Ins. Co.</u>, 641 N.W.2d 877, 880 (Minn. 2002). Unambiguous language is given its plain and ordinary meaning. <u>Id.</u> Ambiguous language is construed against the drafter and in favor of the insured. <u>Nathe Bros. v. Am. Nat'l Fire Ins. Co.</u>, 615 N.W.2d 341, 344 (Minn. 2002). The insured has the burden to establish a prima facie case of coverage. <u>SCSC Corp. v. Allied Mut. Ins. Co.</u>, 536 N.W.2d 305, 313 (Minn. 1995). If coverage is established, the burden shifts to the insurer to prove the applicability of a policy exclusion. <u>Id.</u> Exclusions in an insurance policy are construed strictly against the insurer, in light of the insured's expectations. <u>Thommes</u>, 641 N.W.2d at 880.

The CGL policy provides coverage for those sums which Wanzek became legally obligated to pay because of "property damage" caused by an "occurrence" that took place during the policy period. (<u>See</u> Spalj Aff. Ex. C § 1, ¶¶ 1.a and 1.b(1).) "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." (<u>Id.</u> § V, ¶ 17.) "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (<u>Id.</u> § V, ¶ 13.) The parties do not dispute that Wanzek's negligence in its defective welding constitutes an "occurrence"

13

that resulted in "property damage."  Rather, Continental and Lumbermens argue that the costs of repair and replacement of the welds and the damages incurred as a result of the contaminated corn mash are excluded from coverage under the following three exclusions: (1) the Damage to Your Work exclusion, (2) the Impaired Property exclusion and (3) the Sistership exclusion.

### 1.   Damage to Your Work Exclusion

Continental and Lumbermens argue that to the extent Corn Plus claims damages based upon the costs of repairing and replacing the defective welding, those costs are excluded from coverage under the Damage to Your Work exclusion.[5]  The court agrees.  The "Damage to Your Work" exclusion excludes coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard,'" provided the work was not performed on the insured's behalf by a subcontractor.[6]  (See Spalj Aff. Ex. C. § 1, ¶ 2.1.)  "Your work" is defined as "work or operations" performed by the insured or on the insured's behalf and

---

[5]  Defendants rely on the business-risk doctrine to buttress their arguments.  However, the Minnesota Supreme Court has held that coverage of business risks in a CGL policy is determined "by the specific terms of the contract," as opposed to judicially recognized principles of insurance law.  See Wanzek Constr., Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 327 (Minn. 2004). Accordingly, the court limits its analysis to the confines of interpreting and applying the terms of the CGL policy.

[6]  It is undisputed that the property damage at issue in this case is included in the "products-completed operations hazard." (See Spalj Aff. Ex. C. § 5, ¶ 16.)

"materials, parts or equipment furnished in connection with such work or operations." (See id. § 5, ¶ 12.)  The Damage to Your Work exclusion bars coverage of not only damages to an insured's work but also damages associated with the costs of repairing and replacing an insured's defective product or work. See Bright Wood Corp. v. Bankers Std. Ins. Co., 665 N.W.2d 544, 548-49 (Minn. Ct. App. 2003) (holding damages incurred to repair defective product excluded and noting damages that result from repairs deliberately undertaken would not be accidental and would also not be within definition of "occurrence"); St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F. Supp. 1258, 1264-65 (D. Minn. 1998) (costs of repair, lost use and damages to coating system of structure on which defective work performed excluded); Carpole's Inc. v. Ins. Co. of N. Am., 844 F. Supp. 6, 7 (D. Minn. 1982) (if losses incurred as a result of insured's product are excluded, "it is logical that the cost of cleaning up" is also excluded).

The policy's definition of "your work" is not ambiguous and includes Wanzek's defective welding. See Wanzek Constr., Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 327-28 (Minn. 2004) (definition of "your work" clear and unambiguous).  Therefore, the Damage to Your Work exclusion bars coverage for the damages Corn Plus suffered to the welds of its expansion project.  Furthermore, all damages that Corn Plus has incurred or anticipates incurring based upon the cost of repair and replacement of the defective

welding, including any necessary plant shutdowns to facilitate the repair, are also excluded from coverage.

To the extent Continental and Lumbermens argue that the corn mash contamination is also subject to the Damage to Your Work exclusion, the court disagrees. The unambiguous definition of "your work" does not encompass damage to other property, such as the corn mash. The contamination of the corn mash is "property damage" separate and apart from the defective welding work, and defendants have provided no persuasive argument to the contrary. Cf. Sphere Drake Ins. Co. v. Tremco, Inc., 513 N.W.2d 473, 479 (Minn. Ct. App. 1994) (under business-risk doctrine cost of redoing defective work excluded while cost of repairing damage to property other than the defective work itself not excluded). Therefore, the contamination to the corn mash is not excluded from coverage under the Damage to Your Work exclusion.

### 2.   Impaired Property Exclusion

Continental and Lumbermens argue that the Impaired Property exclusion precludes coverage for (1) the damages related to decreased ethanol production and loss of use of the ethanol facility as a result of the facility's incorporation of the defective welds and (2) the corn mash contamination. The "Impaired Property" exclusion precludes coverage for "property damage" to either "impaired property" or "property that has not been physically injured" if the property damage arises out of "(1) a

16

defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'" or "(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (See Spalj Aff. Ex. C. § 2.m.) "Impaired property" is defined as "tangible property, other than [the work of the insured] that cannot be used or is less useful because: (a) it incorporates [the work of the insured] that is known or thought to be defective, deficient, inadequate or dangerous; or (b) [the insured] has failed to fulfill the terms of a contract or agreement," if "such property can be restored to use by: (a) the repair, replacement, adjustment or removal of [the insured's work]; or (b) [the insured] fulfilling the terms of the contract or agreement." (See id. § V, ¶ 8.)

Defendants argue that any loss of use of the ethanol facility, including decreased ethanol production, that is a result of the defective welding would be loss of use of "impaired property," under either prong of the term's definition. The court agrees. The expansion project of Corn Plus's ethanol facility, including its piping system, is tangible property other than Wanzek's work and is less useful both because it incorporates Wanzek's defective welds and because Wanzek failed to fulfill the terms of its contract. The expansion project of the ethanol facility can be restored to use and full capacity once the welds are repaired or replaced. For these reasons, it is "impaired property," as that

17

term is defined in the CGL policy. Therefore, all "property damage" to the ethanol facility, which would include loss of use of that facility and decreased ethanol production, is excluded from coverage under the Impaired Property exclusion. See Bethke v. Assurance Co. of Am., 2002 WL 31655357, No. C9-02-751, *2 (Minn. Ct. App. Nov. 26, 2002) (impaired property exclusion precluded coverage for loss of use of home when claims were causally connected with insured's failure to fulfill contractual obligations); Std. Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 9-10 (Tenn. Ct. App. 1998) (noting textbook illustration of impaired property exclusion is that coverage would be precluded for loss of use of a building that incorporates defective heating and ventilation system).

Continental and Lumbermens also argue that the corn mash contamination is excluded from coverage under the Impaired Property exclusion. On this point, the court disagrees. The contamination Corn Plus incurred to its corn mash cannot be restored by the repair and replacement of the defective welds. Accordingly, the corn mash does not fall within the definition of "impaired property." Defendants argue that to redo the welds all of the corn mash within the piping system will need to be removed and that the new corn mash flowing through the pipes subsequent to their repair will be "restored." However, defendants ignore the fact that the corn mash currently within the piping system will not be restored,

but replaced.  Moreover, a determination that the contaminated corn mash is not "impaired property" is in accord with other factual scenarios where courts have declined to exclude coverage under the Impaired Property exclusion.  See, e.g., Auto-Owners Ins. Co. v. Home Pride Cos., Inc., 684 N.W.2d 571, 580 (Neb. 2004) ("[B]ecause damage to the roof structures and buildings cannot be repaired or restored by simply reshingling the apartment roofs, they are not 'impaired property.'"); Std. Fire Ins. Co., 972 S.W.2d at 9 (impaired property exclusion "does not apply if there is damage to property other than the insured's work"); Action Auto Stores, Inc. v. United Capitol Ins. Co., 845 F. Supp. 417 (W.D. Mich. 1993) (impaired property exclusion inapplicable when pollution to property surrounding defective containment system could not be remedied by repair or replacement of insured's work); Glens Falls Ins. Co. v. Donmac Golf Shaping Co., Inc., 417 S.W.2d 197, 201 (Ga. Ct. App. 1992) (exclusion inapplicable when damages sought for construction of golf course on federally protected wetlands were not directly related to cost of repair and replacement of work but rather encompassed tort damages beyond scope of contract); cf. Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 970 n. 2 (8th Cir. 1999) (impaired property exclusion not applicable because defective welds could not be restored by further testing).

Defendants' reliance on Sokol & Co. v. Atlantic Mutual Insurance Co., 430 F.3d 417 (7th Cir. 2005), for the proposition

that the corn mash contamination is excluded from coverage under
the Impaired Property exclusion is not persuasive.  In Sokol, the
insured's defective product was packets of peanut butter paste that
had been incorporated into other property, boxes of cookie mix, and
the cookie mix was within the definition of "impaired property."
See 430 F.3d at 423.  The Sokol court did not address the issue of
whether the cookie mix could be restored by removing the defective
packets of paste from the boxes of cookie mix.  See id.  Defendants
also cite to St. Paul Fire & Marine Insurance Co. v. Futura
Coatings, Inc., 993 F. Supp. 1258 (D. Minn. 1998), in support of
their proposition.  However, in St. Paul Fire & Marine Insurance
Co., the court found the Impaired Property exclusion applicable
because the damaged water basins could be restored by the repair
and replacement of the defective sealant.  See 993 F. Supp. at 1263
(impaired property exclusion barred coverage for costs of removing
and replacing sealant products as well as resultant loss of use of
basins).  St. Paul Fire & Marine Insurance Co. is therefore
distinguishable because, as stated, the corn mash contamination
cannot be restored by repairing the defective welds.

    For all the foregoing reasons, the court concludes that the
Impaired Property exclusion does not exclude coverage for the
contamination of the corn mash.  Accordingly, the consequential
damages that Corn Plus has incurred, and continues to incur,
because of the corn mash contamination are also not excluded from

20

coverage.  See Federated Mut. Ins. Co. v. Concrete Units, Inc., 363 N.W.2d 751, 757 (Minn. 1985) (insurer required to pay all damages causally related to an item of covered "property damage").  Those damages causally related to the corn mash contamination include increased costs for antibiotic treatments, increased operational costs to disinfect the corn mash and clean pipes, and plant shutdowns to change cooling lines and address centrifuge issues.

### 3.   Sistership Exclusion

Continental and Lumbermens argue that the Sistership exclusion precludes coverage for damages that Corn Plus has incurred.  The "Sistership" exclusion precludes coverage of the costs incurred "for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of" the insured's product, the insured's work or "impaired property," "if such product, work, or property is withdrawn or recalled from the market or from use ... because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."  (See Spalj Aff. Ex. C. at § I, ¶ 2.n.)  To qualify under the Sistership exclusion, "the repair or replacement process must include more than [the] product that has already failed," because "there is no withdrawal or recall where no attempt is made to prevent future failures." Bright Wood Corp., 665 N.W.2d at 549 (citing Atl. Mut. Ins. Co. v. Judd Co., 380 N.W.2d 122, 125 (Minn. 1986)).  The Sistership exclusion has no application when the product in question is "'not withdrawn from

the market because of a suspected defect in another'" product but is "'withdrawn because it was [itself] damaged by defective construction.'" <u>Atl. Mut. Ins. Co.</u>, 380 N.W.2d at 125 (quoting <u>Ohio Cas. Ins. Co. v. Terrace Enters., Inc.</u>, 260 N.W.2d 450, 455 (Minn. 1978)).

Defendants contend that the <u>Bright Wood Corp.</u> decision supports the proposition that no recall or withdrawal is necessary for the Sistership exclusion to apply. The court disagrees. The Sistership exclusion was applicable to the facts of <u>Bright Wood Corp.</u> because the insured "could not identify which wood components would fail" but rather "had to replace all components that could be defective, thus fitting squarely within the sistership exclusion." <u>Id.</u> at 549. Unlike the facts in <u>Bright Wood Corp.</u>, the only defective work involved in this case is Wanzek's defective welding. Corn Plus became aware of the need to repair the welds not because of any other product or work, but because Wanzek's own work proved to be defective. Therefore, the Sistership exclusion has no application to the facts of this case.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's motion for partial summary judgment [Doc. No. 58] is granted in part and denied in part.

2.   Continental's CGL policy and the Lumbermens excess policy do not provide coverage for the defective welding work of Wanzek Construction, Inc., or the costs incurred by Corn Plus to repair or replace the defective welding, including plant shutdowns.

3.   Continental's CGL policy and the Lumbermens excess policy do not provide coverage for loss of use of the Corn Plus ethanol facility, including decreased production, that has resulted from the facility's incorporation of the defective welding.

4.   Continental's CGL policy and the Lumbermens excess policy do provide coverage for the bacterial contamination of the corn mash used in Corn Plus's ethanol facility and those damages causally related to that contamination, which include increased antibiotic treatments, increased operational costs to disinfect the corn mash and clean pipes, and plant shutdowns necessary to change cooling lines and address centrifuge issues.

Dated: July 26, 2006

s/David S. Doty
David S. Doty, Judge
United States District Court